

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

---

**NO. PD-1236-12**

---

**ANTHONY RAY DAVISON, Appellant**

**v.**

**THE STATE OF TEXAS**

---

**ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW**
**FROM THE ELEVENTH COURT OF APPEALS**
**WALKER COUNTY**

---

**JOHNSON, J., filed a concurring opinion.**

## C O N C U R R I N G   O P I N I O N

On occasion, courts fall into using incorrect terminology, and the incorrect terminology then becomes imbedded in the case law. Thereafter, it continues to bedevil, confuse, and mislead. And, if the problem arises in a superior court, use of the incorrect terminology is forced upon lower courts. For example, the United States Supreme Court has declared that certain classes of persons are "not guilty of the death penalty," i.e. are "actually innocent of the death penalty," by reason of age or mental disability, when what it apparently means is that those classes of persons are ineligible for imposition of the death penalty. *See*, *e.g.*, *Atkins v. Virginia*, 536 U.S. 304, 318, 321 (2002) (the

Constitution forbids capital punishment of mentally retarded offenders, categorically excluding the mentally retarded from execution); *Roper v. Simmons*, 543 U.S. 551, 578 (2005) (the Constitution forbids imposition of the death penalty on offenders who were under the age of eighteen when their crimes were committed); *Sawyer v. Whitley*, 505 U.S. 333, 340, 347-49 (1992) (discussing a claim that the petitioner is "actually innocent of the death penalty," focusing on the elements which render a defendant eligible for the death penalty); *Dretke v. Haley*, 541 U.S. 386, 393-94 (2004) (discussing a claim of "actual innocence" of the sentence).

This Court has not been immune; among other things, we have stated that rights were "waived" when those rights have, in fact, been forfeited. We are now closely examining the use of those two terms in an effort to clear up whatever confusion has been caused by our inexactitude.

I believe that the time is long past for this Court to stop using the phrase "harmless error analysis." Examined logically, "harmless error" is a conclusion reached by an analytic process and cannot, therefore, be the analysis.

When the courts of appeals consider a claim of harmful error, as the first step in the analytic process that this Court has prescribed, they determine whether there was error. If they determine that the trial court did not err, analysis ends. If, however, they find that the trial court did err, they move to the second step of the analytic process and consider what kind of error it is: constitutional (TRAP 44.2(a)) or statutory (TRAP 44.2(b)). Based on the resolution of that question, the courts of appeals then move to the third step of the analytic process and consider whether the claim of harmful error meets the requirements of the applicable standard. Then, and only then, can it be said that an error was harmful or harmless.

The process operates to correctly determine the merits of a claim of harmful error. It might

appropriately be called error analysis or harm analysis because that is what happens. To call it "harmless error analysis," however, is to both inaccurately describe what the process does and make the process vulnerable to assertions that the emphasis in the process is to find as many errors as possible harmless.


Filed: May 22, 2013
Publish